IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 5:17-cr-00025 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| JAMES DANIEL ARBAUGH | ) | United States District Judge |

**MEMORANDUM OPINION**

Pending before the court is James D. Arbaugh's pro se motion for relief pursuant to 28

U.S.C. § 2255, also supported by a supplemental memorandum, and the government's response

thereto, which seeks dismissal of his motion.  (Dkt. Nos. 132, 137, 148.)  Arbaugh filed a reply

and supplemental documentation (Dkt. Nos. 152, 155), both of which the court has considered.

For the reasons stated below, the court will deny Arbaugh's § 2255 motion and decline to issue a

certificate of appealability.[1]

## I.  BACKGROUND

On December 13, 2017, Arbaugh was charged in a one-count indictment with

"knowingly travel[ing] in foreign commerce, from the United States to Haiti, and engag[ing] in

illicit sexual conduct with . . . Minor Victim 1," and an attempt of the same, in violation of 18

U.S.C. §§ 2423(c) and 2423(e).  (Dkt. No. 17.)

Arbaugh is a United States citizen who states that he lived in Haiti and regularly traveled

back and forth between Haiti and the United States from at least 2008 until his arrest in 2017.

(*See* Presentence Investigation Report (PSR) ¶ 10, Dkt. No. 56 (setting forth Arbaugh's

---

[1]  Also pending is a separate motion by Arbaugh titled a "motion for judgment on the merits."  (Dkt. No. 143.)  That motion seeks relief on the grounds that the government did not timely respond to his § 2255 motion. (*See generally id.*)  The court, however, granted the government's motion for an extension of time to file its response, and it was filed by before the extended deadline.  Thus, the delay does not entitle Arbaugh to judgment in his favor, and the court will deny that motion.

statement accepting responsibility); Def.'s Factual Proffer, Dkt. No. 38.) While in Haiti,

Arbaugh held another job, but also worked as a missionary, preaching to impoverished

communities. (U.S. Factual Proffer, Dkt. No. 37.) In 2016, while in Haiti, Arbaugh sexually

assaulted a boy, aged five or six, referred to as Minor Victim 1. (PSR ¶¶ 5, 10.)

The allegations underlying the indictment came to light after Arbaugh returned to the

United States and began attending counseling in July 2017, seeking treatment for his sexual

behavior.[2] (PSR ¶ 3.) Initially, Arbaugh reported to his counselor only consensual contact with

adult men. (*Id.*) He later reported multiple sexual contacts with minor children, and Arbaugh's

counselor reported this information to Virginia Child Protective Services on September 12, 2017.

(*Id.*)

A few days later, in an interview with agents of the Department of Homeland Security,

Homeland Security Investigations (HSI), Arbaugh admitted to instances of sexual contact with

juveniles in Haiti, including individuals ranging in age from 13 to 18 years old, as well as two

much younger children. (*Id.* ¶ 4.) Arbaugh also gave permission for HSI to search his laptop

and showed investigators a picture of Minor Victim 1 as he described the details of the illicit

sexual contact that had occurred. (*Id.* ¶ 5.) During another interview with HSI agents on

September 20, 2017, Arbaugh admitted to additional instances of illicit sexual contact, and, on

September 21, he provided the agents with 21 photographs of boys with whom he had this illicit

sexual contact.[3] (*Id.* ¶ 6.) In his presentence interview, Arbaugh stated that he had illicit sexual

---

[2] Arbaugh had been urged to return and receive counseling by the husband of a female volunteer who had traveled with Arbaugh while in Haiti. The volunteer and her husband informed Arbaugh that the wife had seen something "very disturbing" while in Haiti and asked Arbaugh if he needed to bring anything out into the "open." (Def.'s Sent. Mem. 5, Dkt. No. 49.)

[3] The photos themselves were not child pornography or otherwise incriminating.

contact with Minor Victim 1 in 2016 and that he knew the boy was under 12 years old at the time.  (*Id.* ¶ 10.)

On February 6, 2018, Arbaugh entered a guilty plea to the one-count indictment without the benefit of a plea agreement.  (Dkt. No. 40.)  Both Arbaugh's and the United States' statements of facts indicated that Arbaugh had committed the offense.  (Dkt. Nos. 37, 38.)

In his signed guilty plea form, Arbaugh stated that his plea was made knowingly and voluntarily.  (Dkt. No. 40.)  Additionally, after hearing Arbaugh's testimony under oath at the plea hearing, the court concluded that his plea was knowing and voluntary, and it accepted his guilty plea.  (Dkt. No. 39.)

On July 23, 2018, the court sentenced Arbaugh to 276 months' incarceration followed by a life term of supervised release.  (Dkt. No. 64.)  Arbaugh appealed, challenging the procedure and substance of his sentence.  (Dkt. No. 66.)  The Fourth Circuit affirmed his conviction and sentence, vacated four special conditions of release related to computer usage, and remanded for limited resentencing.  (Dkt. No. 96.)  On April 20, 2021, this court imposed the same sentence as affirmed by the Fourth Circuit and removed the four special conditions.  (Dkt. No. 128.)[4]

On September 1, 2021, Arbaugh filed his motion for relief pursuant to 28 U.S.C. § 2255. (Dkt. No. 132.)  He later filed a supplemental memorandum in support of his § 2255 motion, which was accompanied by an appendix and affidavit signed by Arbaugh.  (Dkt. Nos. 137–38.) Arbaugh raises ten grounds for relief: four constitutional challenges to the charging statute (Grounds 1, 2, 4, and 10), one constitutional challenge to his interviews with HIS agents (Ground 3), three challenges to the constitutionality and sufficiency of his supervised release—both as to its length and as to specific conditions (Grounds 5, 6, and 7), and two constitutional challenges to

---

[4]  While his resentencing was pending, Arbaugh filed a petition for a writ of certiorari to the Supreme Court and filed a motion for compassionate release, both of which were denied.  (Dkt. Nos. 102, 104, 105, 127.)

the Sex Offender Registration and Notification Act (SORNA) (Grounds 8 and 9).  The government filed a response to Arbaugh's motion, arguing that Arbaugh procedurally defaulted his claims, and even if not defaulted, his claims fail on their merits.  (Dkt. No. 148.)  The court agrees that his claims are procedurally defaulted and further concludes that Arbaugh cannot establish actual innocence or "cause and prejudice" sufficient to overcome his default.

## II.  ANALYSIS

### A.  Section 2255

Under 28 U.S.C. § 2255, a movant may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255(a).  The movant bears the burden of proving grounds for collateral relief by a preponderance of the evidence.  *See United States v. Cook*, Criminal No. 1:11-cr-188, 2019 WL 921448, at *1 (E.D. Va. Feb. 25, 2019) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)).  In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  § 2255(b).  The record in this case conclusively establishes that Arbaugh is not entitled to relief, so the court addresses his motion without an evidentiary hearing.

### B.  Procedural Default

An issue can only be raised in a § 2255 motion if it has not been procedurally defaulted. One way a claim is procedurally defaulted is if it could have been raised on direct appeal and was not.  *Massaro v. United States*, 538 U.S. 500, 504 (2003) (stating the general rule that

"claims not raised on direct appeal may not be raised on collateral review"). Claims that have been procedurally defaulted can only be raised "when a habeas applicant can demonstrate cause and prejudice, or actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010).

Actual innocence requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In other words, Arbaugh must demonstrate that he "has been incarcerated for a crime he did not commit." *United States v. Jones*, 758 F.3d 579, 584 (4th Cir. 2014). Actual innocence must be shown by clear and convincing evidence. *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

To demonstrate cause, the movant must show a reason for a procedural default based "on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). For example, a defendant may establish cause for a procedural default "by showing that defense counsel performed deficiently by failing to raise a particular claim." *United States v. Salas*, 807 F. App'x 218, 226 (4th Cir. 2020) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Along with cause, the movant must also demonstrate that he will suffer "actual prejudice" if his claim is not reviewed. *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003). Actual prejudice results from an error that "worked to his actual and substantial disadvantage" and was "of constitutional dimension[.]" *United States v. Frady*, 456 U.S. 152, 170 (1982).

None of the claims raised in Arbaugh's motion were raised on direct appeal, and all claims could have been.  Thus, they are procedurally defaulted.  Arbaugh argues, however, both that he is actually innocent and that his default is excused by his attorney's ineffectiveness.  In particular, he contends that his attorney was ineffective for not discovering the ten claims he now presents, preserving them for review in this court, and then raising them on appeal.

The Supreme Court has directed "that a federal court faced with allegations of actual innocence . . . must first address all . . . other grounds for cause to excuse the procedural default." *Dretke v. Haley*, 541 U.S. 386, 393–34 (2004); *United States v. McKinney*, 60 F. 4th 188 (4th Cir. 2023).  Here, the court concludes that Arbaugh can establish neither cause and prejudice nor actual innocence.  Thus, it will have to address Arbaugh's actual-innocence excuse for procedural default regardless.  *Compare, e.g.*, *McKinney*, 60 F. 4th at 193 (concluding that the § 2255 movant established cause-and-prejudice to overcome his procedural default and thus declining to address his actual-innocence excuse).  And for the purposes of organizing this opinion (and based on the way the parties have briefed the issues), the court addresses actual innocence first and then refers back to its analysis in addressing cause and prejudice.

## C.  Actual Innocence

Arbaugh argues that there has been a miscarriage of justice because he is actually innocent.  As an initial matter, this assertion is undermined by the fact that he pled guilty and admitted to committing the offense.  (*See* Dkt. Nos. 37–40.)  Nonetheless, Arbaugh argues in his reply that he is actually innocent for the reasons stated in Grounds 1, 2, 5, 8, and 10.  (Reply 8, Dkt. No. 152.)  The court concludes that none of these five grounds supports a claim of "actual innocence."

6

### 1. Actual Innocence—Ground One

Arbaugh's first ground for relief posits that his conduct did not fall within the scope of the statute of conviction—18 U.S.C. § 2423(c).  In relevant part, that statute states: "Any United States citizen . . . who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both."  18 U.S.C. § 2423.  Illicit sexual conduct is further defined in § 2423(f).

Arbaugh asserts two separate arguments within Ground One.  First, he contends that he was not "traveling" in Haiti, but was residing there, so his conviction cannot stand.  Second, he argues that he did not commit "illicit sexual conduct" as that term is defined in § 2423(f).

Turning to his first argument, Arbaugh contends that he is actually innocent because he was indicted for engaging in illicit sexual conduct while engaged in "foreign travel," but the conduct at issue did not occur while he was traveling.  Arbaugh claims that he was residing in Haiti and had lived there for years and thus had stopped "traveling."

In support of this argument, Arbaugh points to statements in the PSR and to documents and information submitted with his § 2255 motion to show that he was residing in Haiti and intended to remain there.  For example, he had obtained a Haitian permanent residence card, he was employed full-time, and he gave up his Virginia driver's license and obtained one issued by Haiti.  He had purchased real property in Haiti, and he contends that the property he continued to own in the United States were all investments, such as rental properties, but not places he intended to live.  He also had lived in Haiti for about eight years at the time of the offense.  Moreover, several witnesses testified at sentencing (or in letters submitted to the court in support) that Arbaugh's home was Haiti and he just traveled back to the United States to visit.

(*See* Exhibits to Suppl. Mem. to § 2255 Mot., Dkt. No. 137-2, at 3-6 (describing these facts and citing to portions of the PSR, sentencing transcripts, and newly submitted exhibits, all offered in support of his claim of permanent residency in Haiti).)

With those facts in hand,[5] Arbaugh relies heavily on the Ninth Circuit's decision in *United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018), which was a direct appeal by a defendant convicted under the pre-2013 version of § 2423(c).[6]  There, the defendant claimed that he had relocated to Cambodia in 2003, before the illicit sexual conduct occurred.  Thus, he argued that he was not "traveling" at the time he committed the conduct and could not be convicted under the earlier version of the statute.  In *Pepe*, the United States disputed the defendant's claim that he had resettled, citing his post-arrest letters to the U.S. ambassador and various family members expressing his intent to register his Cambodian marriage and return to the United States with his wife.  895 F.3d at 691.

Without resolving that factual dispute, the *Pepe* Court reversed the defendant's conviction and remanded for a new trial in which the jury could receive proper instruction on the travel element.  *Id.* at 691–92.  In particular, the court noted that the government was required to prove that the defendant was still traveling when he committed the illicit sexual conduct.  It suggested that if he had permanently relocated, he could not be found guilty.  *Id.*

This court concludes that *Pepe* does not establish Arbaugh's actual innocence for several reasons.  First, the defendant in *Pepe* exercised his right to a trial and was challenging jury instructions on appeal, but Arbaugh elected to plead guilty.  By pleading guilty to the charge in

---

[5]  Some of these facts and exhibits were not before the court at the time of his guilty plea or sentencing.

[6]  Prior to 2013, § 2423(c) applied only to those who had "travel[ed] in foreign commerce."  In 2013, § 2423(c) was amended to reach not just persons who traveled to foreign countries but also to U.S. citizens or permanent residents who committed the illicit sexual conduct while temporarily or permanently residing in a foreign country.  *See Pepe*, 895 F.3d at 686–87.

the indictment, he admitted he had traveled in foreign commerce and "regularly traveled back and forth between Haiti and the US." (PSR ¶ 10.) It is also clear that he remained a United States citizen at all times, and he traveled on a U.S. passport. (PSR at 1; *id.* ¶ 7.) Second, *Pepe* is not binding on this court. And the Fourth Circuit has recognized a broader definition of "travel," which could include persons who had remained in the foreign country for some time.

Under the Fourth Circuit definition—and even considering all those facts Arbaugh has now presented—it is possible that he qualifies as having "traveled in foreign commerce" to Haiti. In *United States v. Schmidt*, 845 F.3d 153 (4th Cir. 2017), for example, the Fourth Circuit held that the defendant's conduct fell within the "foreign travel" portion of the statute (also the pre-2013 version). In *Schmidt*, the defendant had fled the United States after violating his parole and spent 18 months in the Philippines on a series of two-month tourist visas. *Id.* at 155, 158. While there, he obtained a driver's license, work permit, and a local job, and he rented a home. *Id.* at 157. He then left the Philippines for Cambodia, and engaged in child sexual offenses in Cambodia. *Id.* at 155. The court upheld his § 2423(c) conviction. *Id.* at 159.

In doing so, the *Schmidt* Court pointed out some factors that are also present in this case. For example, both Schmidt and Arbaugh traveled on a U.S. passport at all times. The court recognizes, though, that there were more factors supporting the "foreign travel" element in *Schmidt*, and Arbaugh's case is a closer call. In particular, and unlike Arbaugh, Schmidt "made no effort to obtain permanent status in another country." *Id.* at 158. Instead, he was at all times "a visitor in both the Philippines and Cambodia." *Id.*

Nonetheless, the *Schmidt* Court interpreted the term "traveling" broadly as "encompass[ing] movement abroad that maintains some nexus with the United States." *Id.* at 157. It noted, for example, that "[m]ovement directly to or from the United States is

unquestionably an adequate nexus." *Id.* Thus, a defendant "may still be traveling even after a significant amount of time in a given location so long as the visit is sufficiently transient or contemplates some future departure." *Id.*

The *Schmidt* Court also rejected the defendant's argument that he was no longer traveling because he had no intent to return to the United States and thus his travel in foreign commerce necessarily concluded after his arrival in the Philippines. It explained: "[T]he element of travel and requisite nexus with the United States is an objective inquiry that does not turn solely on self-serving and subjective allegations of intent. While intent to permanently resettle may be one factor in determining when relevant travel in foreign commerce comes to an end, it is not dispositive." *Id.*

Here, although Arbaugh insists he was living in Haiti at the time of the offense, he also freely admits to traveling back and forth between the two countries, in addition to residing in Haiti. (*See* Def.'s Factual Proffer (stating that Arbaugh "is a citizen of the United States who has lived in Haiti for approximately fifteen years, and is a resident there. Throughout his time in Haiti, he has traveled regularly back to the United States to visit, returning to the U.S. once to twice per year on average"); PSR ¶ 10 ("I, James Daniel Arbaugh, am a US citizen who lived in Haiti and regularly traveled back and forth between Haiti and the US.").) Thus, his visits to Haiti "contemplate[d] some future departure." *See Schmidt*, 845 F.3d at 157. Under this language, Arbaugh's travel in foreign commerce had not ended at the time he engaged in sexual contact with MV1.

Even more on point is *United States v. Bollinger*, 798 F.3d 201 (4th Cir. 2015), where the Fourth Circuit concluded, on facts similar to those here, that the defendant had engaged in foreign travel and violated § 2423(c). Bollinger and his wife had moved to Haiti in 2004 to

oversee a religious center in Port Au Prince. *Id.* at 203. In 2009, he began molesting young girls who came to the center asking for help, and he admitted to fondling and performing oral sex on the girls. *Id.* at 203–04. Later in 2009, he returned to the United States and admitted to a therapist that he had sexual contact with young girls in Haiti. *Id.* Although Bollinger had been living and working in Haiti for five years, the court nonetheless upheld his conviction under the pre-2013 version of § 2423(c).[7] Thus, the fact that Arbaugh had worked and resided in Haiti for years before he committed his offense does not necessarily mean that he does not satisfy the "traveled in foreign commerce" portion of the charged offense.

The court's conclusion is further supported by the *Schmidt* Court's discussion of legislative history. It first noted the purpose behind the original enactment of § 2423(c), in which the House Conference Report explained that the subsection was passed to do away with any requirement that the government prove that the defendant traveled with the intent to engage in the illegal activity. Under the section, "the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country." *Schmidt*, 845 F.3d at 156 (citing H.R. Conf. Rep. No. 108-66, at 51 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 686). It next reasoned that the 2013 amendments may have been meant to *clarify* the original meaning of § 2423(c), rather than to change it. *Id.* at 156 n.2. These explanations of the meaning of the statute and the broad reach it was intended to have all further support the conclusion that Arbaugh is guilty of committing an illicit sex act against MV1 while engaged in foreign travel.

The United States also posits that, even if Arbaugh was not traveling at the relevant time, he was residing temporarily or permanently in Haiti, and the statute was amended prior to his

---

[7] The *Bollinger* court did not address this precise argument, apparently because the defendant did not dispute that he had "traveled in foreign commerce."

conduct to encompass that behavior.  (Gov't Resp. to § 2255 Mot. 8–9, Dkt. No. 148.)  Indeed, the courts in *Pepe*, *Schmidt*, and *Bollinger* all were analyzing convictions under the older version of the statute that did not include the language "or resides, either temporarily or permanently, in a foreign country," § 2423(c).

Arbaugh does not seem to dispute that he would qualify as "resid[ing], either temporarily or permanently" in Haiti.  But he points out that he was indicted under the "foreign travel" section of the statute, not the portion that refers to a defendant's residing in a foreign country. Thus, his argument continues, even if the amended statute can be applied to U.S. citizens residing in a foreign country, he was not indicted under that portion of the statute and his guilty plea and conviction cannot stand under that portion.  (*See* Reply 11.)

The court disagrees.  Essentially, Arbaugh is arguing that there was a fatal variance or constructive amendment of the indictment.  The Fourth Circuit has explained these terms as follows:

> A fatal variance—also known as a constructive amendment—occurs when the government (through argument or presentation of the evidence) or the district court (through jury instructions) "broadens the bases for conviction beyond those charged in the indictment," effectively amending the indictment to allow the defendant to be convicted of a crime other than the one charged, in violation of his Fifth Amendment right to be tried only on the charges made by the grand jury in the indictment. *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). Divergence between the charges and the Government's proof is not automatically a constructive amendment or fatal variance; when the facts proven at trial support a finding that the defendant committed the charged crime, and the allegations in the indictment differ in some way not essential to that conclusion, a mere variance has occurred.  *See United States v. Miltier*, 882 F.3d 81, 93 (4th Cir. 2018), *cert. denied,* —— U.S.L.W. —— (U.S. Oct. 1, 2018) (No. 17-9189); *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013).  A variance violates the defendant's Fifth Amendment rights only if it prejudices him by surprising him at trial and hindering his defense, or "by exposing him to the danger of a second prosecution for the same offense."  *Allmendinger*, 706 F.3d

at 339. In considering a constructive amendment or fatal variance claim, the key inquiry is whether the defendant has been tried on charges other than those in the indictment. *See United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016); *Allmendinger*, 706 F.3d at 339.

*United States v. Olla*, 754 F. App'x 168, 170 (4th Cir. 2018); *see also United States v. Roe*, 606 F.3d 180, 189–90 (4th Cir. 2010) (describing the same).

Here, Arbaugh pled guilty to the charge in the indictment, which was a violation of § 2423(c). To the extent he claims that there was a divergence, *i.e.*, he was charged with committing the illicit sexual act after "foreign travel," but the facts he admitted as part of his plea meant he should have been charged with—or was actually convicted of—committing the illicit sexual act while residing temporarily or permanently in a foreign country, that divergence is neither a constructive amendment nor a fatal variance. This is so because "the allegations in the indictment differ in [a] way not essential to the conclusion that he committed the charged crime." *See Olla*, 754 F. App'x at 170. Put differently, under the relevant version of the statute (the post-2013 statute), the offense can be committed either way, and the facts Arbaugh admitted still support a finding that he committed the charged crime. *Cf. Pepe*, 895 F.3d at 686 (explaining that, after the 2013 amendments, the element of "travel in foreign commerce" "can now be satisfied in two ways. One either 'travels in foreign commerce or resides . . . in a foreign country'"); *United States v. Sebastian*, No. 20-cr-10170-DJC, 2023 WL 2187895, at *4 (D. Mass Feb. 23, 2023) (explaining that § 2423(c) requires proof that a defendant "traveled to or resided in" the foreign country and citing to pattern jury instructions to conclude that the elements the government must prove are that defendant (1) is a United States citizen; (2) traveled in foreign commerce or resided, either temporarily or permanently, in a foreign county; and (3) while traveling in foreign commerce or residing in a foreign country, engaged in illicit sexual conduct.

Further, the indictment was not required to specify the precise way in which Arbaugh violated the statute. *See* Fed. R. Crim. P. 7(c)(1) ("A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.").

The difference Arbaugh points out (between the indictment and proof/his plea), then, is simply a different way of committing the same offense, not different elements or different offenses altogether. At most, therefore, there occurred a "mere variance." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (concluding that where an indictment charged an assault "by way of sexual intercourse" but the proof showed only "sexual intrusion," and where either one is a means of committing the same assault, only a "mere variance" occurred). Put differently, the purported variance here—to the extent it exists at all—did not alter the elements of the offense or what the offense of conviction was; it simply varied the means by which Arbaugh committed it. In sum, the fact that the indictment referred to Arbaugh committing the offense after foreign travel, while he may actually have committed it by residing in Haiti, does not mean that he pled guilty to, or was convicted of, an offense not charged in the indictment. Nor did that difference prejudice Arbaugh in any way, *see Randall*, 171 F.3d at 203, violate any constitutional right, or render him "actually innocent" of violating § 2423(c), the offense to which he pled guilty.

Also unconvincing is Arbaugh's second argument within Ground One: that the term "illicit sexual conduct" in the statute is vague or only applies to acts that occur in the special maritime and territorial jurisdiction of the United States.[8] This argument is not consistent with a

---

[8] The term "illicit sexual conduct" means, among other definitions, "a sexual act . . . with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 2423(f).

14

fair reading of the statute.  *See United States v. Carter*, 776 F.3d 1309, 1332–3 (11th Cir. 2015) (explaining that the statute's phrase "if the sexual act occurred in the special maritime and territorial jurisdiction of the United States" simply means that the acts the defendant committed in foreign commerce would be unlawful if they had occurred in the special maritime and territorial jurisdiction of the United States).  Thus, Arbaugh has not shown he is actually innocent of committing illicit sexual conduct.

### 2.  Actual Innocence—Ground Two

Arbaugh next contends that he is actually innocent because the statute is unconstitutional both on its face and as applied to his behavior, which he insists did not affect foreign commerce. (Def.'s Suppl. Mot. 4–14, Dkt. No. 137-1.)  The court disagrees.

Most courts addressing whether Congress has authority to regulate noncommercial sexual acts committed by United States citizens in foreign countries look to two sources for that authority: Congress's authority under the Foreign Commerce Clause and the "the necessary and proper" clause, which permits Congress to effectuate treaties and other such agreements.  *See, e.g.*, *United States v. Bollinger*, 798 F.3d 201, 208 & n.3 (4th Cir. 2018) (noting both as potential source of authority for § 2423 but declining to address the latter after finding the former was sufficient authority).  Courts are divided, however, on whether § 2423(c) is a proper exercise of Congress's power under either or both sources, and often, it seems to depend on the facts underlying the defendant's conduct.  *See United States v. Lindsay*, 931 F.3d 852, 862–863 (9th Cir. 2019); *see also United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("No circuit

court has declared § 2423(c) unconstitutional.").[9]

Critically, though, the Fourth Circuit has squarely held that Congress acted within its constitutional authority in enacting § 2423(c), even as applied to non-commercial sex with a minor abroad. *Bollinger*, 798 F.3d at 218. As the *Bollinger* court explained, "Congress may . . . regulate an activity when it is rational to conclude that the activity has a demonstrable effect on foreign commerce. It is eminently rational to believe that prohibiting the non-commercial sexual abuse of children by Americans abroad has a demonstrable effect on sex tourism and the commercial sex industry." 798 F.3d at 218. The court went on to explain in some detail why such a conclusion was reasonable. *Id.* at 218–19. *See also United States v. Durham*, 902 F.3d 1180, 1215 (10th Cir. 2018) ("Here, the legislative history, the overall statutory scheme, and jurisdictional hook all evince that Congress had a rational basis for concluding that, in the aggregate, Americans who travel abroad and have noncommercial sex with minors substantially affect the international sex tourism market. Congress determined, after years of experience with

---

[9] The *Lindsay* Court cited to much of this authority, ultimately agreeing with the analysis of the Tenth and Fourth Circuits:

> We hold that non-commercial sex with a minor abroad fairly relates to foreign commerce, and that Congress accordingly acted within its constitutional bounds when it enacted the non-commercial part of section 2423(c). The question is admittedly difficult, having led judges across the country to reach different outcomes. *Compare United States v. Durham*, 902 F.3d 1180, 1210 (10th Cir. 2018) (upholding section 2423(c) under broader power than under Interstate Commerce Clause); *United States v. Bollinger*, 798 F.3d 201, 218 (4th Cir. 2015) (same), *with United States v. Pendleton*, 658 F.3d 299, 308 (3rd Cir. 2011) (upholding section 2423(c) under *Lopez/Morrison* framework), *and Durham*, 902 F.3d at 1241 (Hartz, J., dissenting) (concluding that section 2423(c) exceeds Foreign Commerce Clause authority); *United States v. Reed*, 2017 WL 3208458, at *14 (D.D.C. July 27, 2017) (same); *United States v. Al-Maliki*, 787 F.3d 784, 793–94 (6th Cir. 2015) (concluding that it was likely that section 2423(c) was unconstitutional, but that such error was not plain). . . . [W]e agree with our sister circuits' analysis in *Durham* and *Bollinger*.

931 F.3d at 862.

the evolving legislative framework, that it needed § 2423(c) to complete the package.  We cannot say this choice was unreasonable.") (footnote omitted).

The *Bollinger* court also found it "worthwhile" to address the consequences of a contrary holding:

> In that case, a citizen could effectively avoid all police power by leaving U.S. soil and traveling to a nation with weak or non-existent sexual abuse laws. The citizen would be free to act with impunity—a reality that could undoubtedly have broad ramifications on our standing in the world, potentially disrupting diplomatic and even commercial relationships. Of course, the Tenth Amendment reserves unenumerated powers to the states and the people. But the Constitution does not envision or condone a vacuum of all police power, state and federal, within which citizens may commit acts abroad that would clearly be crimes if committed at home.

798 F.3d at 219.  The same rationale applies as much to those United States citizens—like Arbaugh—who reside long-term in a foreign country and travel back to the United States frequently, as it does to those who merely visit a foreign country.  In short, *Bollinger*'s holding that § 2423(c) is a valid exercise of Congress's authority is dispositive of Arbaugh's facial challenge to the statute.[10]

In his reply, Arbaugh counters that the facts of his case raise a valid as-applied challenge and that those facts mean that the statute is unconstitutional as applied to him.  The court does not discount the possibility that there might be some valid as-applied challenge to the constitutionality of § 2423(c).  *See United States v. Park*, 938 F.3d 354, 374 (D.C. Cir. 2019) (upholding the constitutionality of § 2423(c) against constitutional challenge and finding it a proper exercise of Congressional authority under several sources, but acknowledging the

---

[10]  *Bollinger* only addressed a facial challenge to the statute.  798 F.3d at 210 n.5.  Arbaugh acknowledges *Bollinger*'s holding, but suggests this court should issue at least a certificate of appealability allowing the Fourth Circuit to "revisit" its ruling in *Bollinger*.  (Suppl. Mem. 14.)  This court is bound by published decisions issued by the Fourth Circuit.  *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 642 (4th Cir. 1975).  The Fourth Circuit will make its own decision as to whether to issue a certificate of appealability.

possibility that "some applications of the statute may exceed Congress's authority"); *United States v. Reed*, Criminal No.15-188 (APM), 2017 WL 3208458, at *11–13  (D.D.C. July 27, 2017) (reversing § 2423(c) conviction of defendant, a U.S. citizen, who molested his own child while residing abroad in the Philippines).  But Arbaugh's conduct has a sufficient enough connection to foreign commerce to render § 2423(c) constitutional as applied to him.  First, and although *Bollinger* did not address an as-applied challenge, the facts here are substantially similar to *Bollinger* in terms of residency and travel.  Arbaugh's acts were not directly commercial, in that he did not directly give his victim money or items of value in exchange for sex.  Nonetheless, several courts of appeals have explained that even non-commercial sexual acts could reasonably affect the worldwide trade for sex tourism.  *See supra* n.9 (quoting *Lindsay*, 931 F.3d at 862–863.)  Moreover, Arbaugh was present in Haiti as a missionary and worked closely with an organization incorporated in the United States, which his brother and others from Virginia formed.  (Def.'s Sent. Mem. 2.)  That company drilled wells and provided other assistance to rural communities in Haiti, likely using at least some United States funds for the projects.  (*Id.*)  Additionally, his travel and investments in the United States, which likely contributed to his ability to live in Haiti, are other factors that tie his conduct in Haiti to foreign commerce.  Thus, for the same general reasons discussed by the *Bollinger* court, the court concludes that, as applied to Arbaugh, § 2423(c) is a valid exercise of Congress's power to regulate foreign commerce.

### 3.  Actual Innocence—Ground Five

Ground Five is Arbaugh's challenge to the lifetime supervised release term.  Arbaugh claims that the term is improper because the mandatory maximum punishment for a term of incarceration is thirty years.  But the statute specifically contemplates allowing a lifetime term of

supervised release, and the Fourth Circuit already affirmed that portion of his sentence.  For the reasons explained by the United States, his reliance on *United States v. Haymond*, 588 U.S. --, 139 S. Ct. 2369 (2019), is misplaced, as *Haymond* did not affect the portion of 18 U.S.C. § 3583(k) applicable to his offense.  Thus, this argument does not establish actual innocence, either.  (*See* Gov't Resp to § 2255 Mot. 14–15 (explaining *Haymond*).)

### 4.   Actual Innocence—Ground Eight

In Ground Eight, Arbaugh confusingly argues that SORNA is unconstitutional because it requires that a defendant "barter" his liberty (by signing up as a sex offender) or else he cannot be released from custody.  As the United States notes, numerous courts have upheld SORNA against similar types of arguments.  (Gov't Resp. to § 2255 Mot. 17–18.)  This claim does not show that Arbaugh is actually innocent of his offense.

### 5.   Actual Innocence—Ground Ten

In his tenth ground for relief, Arbaugh argues that § 2423(c) is unconstitutionally vague because it fails to define the term foreign "places" and to specify "foreign countries."  (§ 2255 Mot. 14, Dkt. No. 132.)  He cites to nothing for this argument, and the court finds no merit in it and will not discuss it further.  It does not establish that he is actually innocent so as to overcome his procedural default.

***

All of Arbaugh's contentions of actual innocence thus fail.

## D.  The Alleged Ineffective Assistance of Arbaugh's Counsel Does Not Establish Cause or Prejudice Sufficient to Overcome His Procedural Default.

The court also addresses whether Arbaugh can show cause and prejudice for his procedural default.  As applicable to all of his claims, and because they all lack merit as the court

discusses, Arbaugh cannot establish that his counsel was ineffective for failing to raise any of

them.  For the same reason, his counsel was not ineffective for failing to raise any of them.

Before addressing his specific claims, though, the court notes that counsel has no duty to

raise every issue requested by a defendant on an appeal.  *Jones v. Barnes*, 463 U.S. 745, 754

(1983).  Counsel's failure to pursue a basis for appeal by reason of an estimation of the

likelihood of success does not constitute constitutionally ineffective representation.

*Mikalajunas*, 186 F.3d at 493; *see also Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983)

("[W]e do not believe that failure to raise every issue which might have support from other

jurisdictions constitutes ineffective assistance of counsel.").  In fact, Arbaugh's counsel raised

five challenges to his sentence on direct appeal, one of which was successful.[11]  At a certain

point, it is beneficial to narrow the issues presented on appeal, emphasizing the ones with the

greatest chance of success.  *See Griffin v. Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985) (noting

counsel's testimony that "it was in Griffin's best interest not to raise every issue on appeal and

that they did not want to 'clutter up the brief' with issues they determined were less meritorious"

and concluding that because this was a "strategic decision on appellate counsel's part based on

what we consider to be reasonable professional judgment, it is not proper for us to second-guess

the judgment of appellate counsel so as to impose a duty to raise every colorable claim").[12]

---

[11]  Arbaugh argued that (1) the district court committed procedural error by including a two-level enhancement based on age disparity under U.S.S.G. § 2G1.3(b)(2); (2) the court failed to adequately address the need to avoid unwarranted sentence disparities when explaining its sentence under § 3553(a); (3) the court imposed a substantively unreasonable term of 276 months' imprisonment; (4) the court failed to adequately explain its reasons for imposing a lifetime term of supervised release; and (5) the court failed to adequately explain why it imposed four restrictions related to computer usage as special conditions of supervised release.  (Dkt. No. 96 at 5.) The Fourth Circuit rejected all but the last argument.

[12]  In his reply, Arbaugh argues that his attorney was ineffective when she advised him that pleading guilty without a plea agreement would preserve his rights to appeal and collateral attack.  (Dkt. No. 152 at 5 (citing *United States v. Akande*, 956 F.3d 257 (4th Cir. 2020)).  This was not ineffective assistance, but valid advice.  Frequently in this district, the written plea agreements offered by the United States include a waiver of a defendant's right to appeal and to collaterally attack his conviction or sentence.  Moreover, his right to appeal and to file a § 2255 were

**1.   Constitutional challenges to the charging statute (Grounds 1, 2, 4, and 10)**

As noted, four of Arbaugh's challenge are constitutional challenges to the statute to which he pled guilty.  *See* 28 U.S.C. § 2423(c).  The court has already discussed Grounds 1, 2, and 10, in discussing Arbaugh's claims of actual innocence.  In the remaining ground, Ground 4, Arbaugh contends that the prosecution of Arbaugh denied Haiti its treaty rights.  On this issue, the court agrees with the government, both that: (1) the laws and treaties of a foreign nation do not limit Congress's ability to enact and enforce its own laws; and (2) the United States is a signatory to the same treaty, which gives it the responsibility of passing and enforcing laws to protect children from child sexual abuse and production of child pornography by U.S. citizens staying or living abroad.  (Gov't Resp. to § 2255 Mot. 10.)

For the reasons discussed in this section, then, counsel was not ineffective for failing to raise non-meritorious claims, either before this court or on appeal  Likewise, because of the lack of merit, Arbaugh cannot show a "reasonable probability" that the outcome of the proceeding would have been different had counsel raised them.  Thus, he cannot overcome his procedural default of this claim.

**2.   Constitutional challenge to interviews with Homeland Security (Ground 3)**

In Ground 3 of his petition, Arbaugh argues that his counsel should have raised on appeal an argument that his interviews with HSI agents were conducted in violation of his rights under *Miranda*[13] and that they were otherwise coercive.  The United States offers a number of arguments as to why his contention is incorrect as a factual matter.  (Govt's Resp. to Mot. Dismiss 12–13.)  Regardless, though, by pleading guilty unconditionally (as opposed to via a

---

preserved, as counsel advised and, indeed, he appealed several issues and has now filed his § 2255.  Because counsel was not ineffective, this advice by counsel does not overcome any procedural default.

[13] *Miranda v. Arizona*, 384 U.S. 436 (1966).

conditional guilty plea), Arbaugh waived any right to challenge or move for the suppression of any such statements. *United States v. Wiggins*, 905 F.2d 51, 52 (4th Cir. 1990) ("[D]irect review of an adverse ruling on a [motion to suppress] is available only if the defendant expressly preserves that right by entering a conditional guilty plea."); *United States v. Dennis*, 496 F. App'x 268, 270 (4th Cir. 2012) (explaining that because the defendant voluntarily entered a plea of guilty, he waived appellate review of whether an inculpatory statement he made was taken in violation of *Miranda*). Thus, counsel was not ineffective for failing to raise this claim on appeal.

To the extent that Arbaugh is arguing that his counsel was ineffective for advising him to plead guilty instead of challenging the statements, he can establish prejudice only by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Arbaugh has not presented facts sufficient to satisfy this standard. First of all, for many of the reasons explained by the United States, his statements were not inadmissible. And with those admissions, it is very likely that he would have been found guilty had he proceeded to trial. By pleading guilty, he at least received a reduction in his guideline range for acceptance of responsibility, which he would not have received had he gone to trial. There is no reasonable probability that he would have gone to trial had counsel given some different advice about the admissibility of his statements to agents.

### 3. Challenges to the constitutionality and sufficiency of his supervised release terms (Grounds 5, 6, and 7)

Notably, the one claim on which Arbaugh was successful in his direct appeal was his challenge to certain of the supervised release terms. The Fourth Circuit concluded that the district court had not adequately explained the need for the four computer-related terms, and it

22

remanded for a limited resentencing.  *United States v. Arbaugh*, 951 F.3d 167 (4th Cir. 2020).
At the resentencing, the court elected not to re-impose those conditions.

Arbaugh now contends, however, that the court also erred in including other supervised
release terms and imposing a lifetime term of supervised release.  The latter argument the court
already has addressed.  Moreover, he challenged on appeal the lifetime term of supervised
release (albeit on a different ground) and that portion of his sentence was affirmed.

As to the claims that some of his supervised release terms are unconstitutional, Arbaugh
insists that some of the terms are unconstitutional because they are vague ("e.g., loitering is not
defined"); they should not apply to him; they infringe on others' rights; or they were not intended
to be applied for life.  (§ 2255 Mot. at 13.)  He also claims that the court did not adequately
explain the basis for each term.  (*Id.* at 13–14.)

Having considered Arbaugh's arguments, the court easily concludes that his counsel's
failure to raise them all was not defective performance.  As the court noted previously, counsel
has no duty to raise every issue requested by a defendant on an appeal.  *Jones*, 463 U.S. at 754.
Moreover, he has not shown that these particular arguments were likely to succeed, either before
this court or on appeal, so he also cannot establish prejudice.

### 4.  Two constitutional challenges to the Sex Offender Registration and Notification Act (SORNA) (Grounds 8 and 9)

Arbaugh's remaining two grounds for relief are challenges to the Sex Offender
Registration and Notification Act ("SORNA").  He argues first that SORNA is an impermissible
restraint on liberty and second that it is impossible for him to comply with SORNA while
incarcerated.  Again, he should have raised these claims on direct appeal and has procedurally
defaulted them.

And again, as with his other claims, he cannot show cause and prejudice for that default. He cites to no authority that holds that SORNA is unconstitutional on any ground. As the United States notes in its response, SORNA has been upheld against numerous constitutional challenges. (Gov't Resp. 17–18.)

Likewise, Arbaugh's argument about an inability to comply with SORNA is belied by the very statute he cites. As he notes, 34 U.S.C. § 20919(a) requires the Bureau of Prisons to ensure he is registered with SORNA before his release. Thus, prior to his release he will be able to comply by registering. His inability to do so immediately does not render the statute void. Arbaugh thus cannot show that his counsel was ineffective for failing to raise his SORNA challenges on direct appeal, nor can he show prejudice from that failure.

**E.  Certificate of Appealability**

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a certificate of appealability. *See* Fed. R. Gov. § 2255 Proc. 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When, as here, a district court dismisses a 2255 motion on procedural grounds, a certificate of appealability will not issue unless the movant can demonstrate both that (1) jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right; and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court declines to issue a certificate of appealability because Arbaugh has not demonstrated that reasonable jurists would find it debatable that the motion states a valid claim of the denial of a constitutional right or that the court was correct in its procedural ruling.

III.  CONCLUSION

For these reasons, the court will deny Arbaugh's § 2255 motion and decline to issue a

certificate of appealability.  The court will issue an appropriate order.

Entered: November 6, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge